UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| DS Fordham Landing 1 LLC, | Case No. 26-22254-SHL |
| Debtor. | |

---------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| Dynamic Star LLC, | Case No. 26-22255-SHL |
| Debtor. | |

---------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| DS 1 GP Inc., | Case No. 26-22256-SHL |
| Debtor. | |

---------------------------------------------------------------x

## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

DS Fordham Landing 1 LLC ("DS Fordham"), Dynamic Star LLC ("Dynamic"), and DS 1 GP Inc. ("DS 1") (collectively, the "Fordham South Debtors") hereby propose the following Joint Chapter 11 plan of reorganization (the "Plan") pursuant to the provisions of Title 11 of the United States Code (the "Bankruptcy Code").

## FRAMEWORK OF THE JOINT PLAN

The Fordham South Debtors sought chapter 11 relief with a clear two-fold vision: (i) to continue with the Fordham Landings South redevelopment project to build almost 1,000 affordable housing units at the Property (the "Fordham South Project") with the assistance of Lettire and its anticipated financing commitments; and (ii) to obtain funding to address and pay the allowed claims and Class B interests of, among others, Igal Namdar ("Namdar") in his capacity as the holder of the Debtors' senior mortgage debt and preferred equity held through various affiliates

(Fordham South Lender LLC (the "Senior Lender") and Namdar Fordham South LLC ("Namdar South").

Shortly before the commencement of the Chapter 11 cases, and continuing thereafter, the Debtors, led by Gary Segal and his affiliated companies, formed a joint venture (Fordham Landings South Partners LLC) with a well-regarded affordable housing developer known as Lettire Construction Corp. and Urban Builders Collaborative LLC (jointly, "Lettire") to complete pre-development work and arrange the necessary financing for the Project, which has large institutional and municipal financing components.  The Project has continued to advance during the bankruptcy cases, to the point that the Debtors have now obtained the attached Construction and Permanent Financing Commitment from Lettire, a copy of which is annexed hereto as Exhibit "A" (the "Commitment").  The Commitment forms the cornerstone of this Plan and provides the necessary financing to enable the Debtors to pay allowed claims and Class B interests (following a determination of the proper amounts owed) in consideration for a transfer and conveyance of the Property to the entity designated by Lettire to take title ("Newco"), free and clear of all claims, liens and interests.  Newco will then become the Borrower and fee owner of the Project, with Gary Segal and his partners eligible to share in 50% of the profits generated from all development and construction fees.

To date, Lettire and Gary Segal have led the effort to source financing for the Plan.  The Debtors intend to pay the Senior Lender's claims in full after proper reconciliation and certain objections.  At this point, the Senior Lender's entitlement to certain interest, default interest and various fees is disputed.  In fact, the Debtors intend to file and pursue objections to certain aspects of the Senior Lender's claims, which will run concurrently with the proceedings seeking to confirm this Plan.  The objections will be centered upon the fact that Namdar, using a strawman, CREMAC

2

Real Estate, secretly purchased the underlying first mortgage rather than assisting his parters to refinance in an improper effort to stymie the Project. This misconduct goes to Namdar's entitlement to certain interest, default interest and fees, although the principal mortgage debt of $44.5 million will be paid on the Effective Date. Besides mortgage debt, the Commitment also allows the Debtors to pay the balance of other allowed unsecured claims, classified as Class 2, based upon a pro rata distribution from a General Creditor Reserve. The Debtors also project available funds to pay Mr. Namdar's Class B equity interest held by his affiliate, defined as Namdar South, in whole or in part.

## ARTICLE I

## <u>DEFINITIONS</u>

All capitalized terms used herein shall have the meanings set forth below.

1.1 "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 case under §§ 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of maintaining and preserving the Property; and (b) the awarded compensation and reimbursement of expenses for the Debtors' bankruptcy counsel.

1.2 "**Allowed**" means, with reference to any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, that has scheduled by the Debtors as being liquidated and undisputed, and as to which: (a) no objection to allowance has been interposed within the applicable period fixed by the Plan; or (b) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

1.3 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York.

1.4 "**Bar Date**" means the last date set by the Bankruptcy Court to file a Claim against the Debtor.

1.5 "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.6 "**Cash**" means on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction (other than as may be

provided in this Plan or in the Confirmation Order) no later than the next Business Day.

1.7 "**Cases**" means the bankruptcy cases of the Debtors.

1.8 "**Causes of Action**" means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suit damages, judgments, claims and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise.

1.9 "**Claim**" means a claim against the Debtors as defined in Bankruptcy Code § 101(5).

1.10 "**Claim Objection Deadline**" shall mean no later than thirty (30) days after entry of the Confirmation Order.

1.11 "**Claimant**" shall mean the holder of a Claim.

1.12 "**Class**" shall mean a category of Claims or Interests set forth in Article III of this Plan, as such term is used and described in Section 1122 and Section 1123(a)(1) of the Bankruptcy Code.

1.13 "**Closing**" means the day when the Debtors transfer the Property to a special purposed entitled designated under the Commitment as the Buyer/Borrower.

1.14 "**Confirmation**" means approval of the Plan by the Bankruptcy Court.

1.15 "**Confirmation Fund**" means the loan proceeds allocated for acquisition funding under the Commitment to be used to pay and discharge the Debtors' obligations hereunder projected to be at least $75.2 million (sometimes known as the "Exit Financing").

1.16 "**Confirmation Order**" means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.17 "**Creditor**" means the holder of a Claim against the Debtors.

1.18 "**Disputed Claim**" means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim (including an Administrative Expense), or portion thereof, that has not been disallowed and with respect to which an objection or action concerning the allowance and/or extent thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection or action has not been resolved by a Final Order.

1.19    "**Disbursing Agent**" means Goldberg Weprin Finkel Goldstein LLP.

1.20    "**Disputed Claim Reserve**" means the escrow established by the Debtors at the Closing with the Disbursing or Escrow Agent for the deposit of cash reserves to secure payment of the disputed portion of a creditor's particular claim.

1.21    "**Effective Date**" means the day when the Closing occurs.

1.22    "**Equity Interests**" means the Debtors' membership interests held directly or indirectly by affiliates of Gary Segal and his partners and Igal Namdar as the Class A and Class B members.

1.23    "**Escrow Agent**" means Goldberg Weprin Finkel Goldstein LLP.

1.24    "**Final Order**" means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified within fourteen (14) days of entry and is no longer appealable.

1.25    "**Loan Documents**" means the loan and collection documents executed in connection with the senior mortgage loans made to DS Fordham as assigned to Fordham South Lender LLC as evidenced by, *inter alia*, a consolidated mortgage instrument and related Promissory Note dated as of March 29, 2023 in the principal amount of $42,500,000 and recorded in the Office of the City Register, Bronx County, at CRFN 2023000080960.

1.26    "**Petition Date**" means March 15, 2026, the date on which the voluntary petitions commencing these Chapter 11 cases were filed.

1.27    "**Priority Tax Claim**" means any Unsecured Claim of a federal, state or local taxing authority for real estate taxes and related charges.

1.28    "**Professional**" means all professionals employed by the Debtors under Section 327 of the Bankruptcy Code.

1.29    "**Professional Fee Claim**" means a Claim for compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by the Bankruptcy Court.

1.30    "**Proof of Claim**" means a Proof of Claim filed pursuant to Section 501 of the Bankruptcy Code and the applicable Bankruptcy Rules.

1.31    "**Property**" means the property located at 320-340 Fordham Road, Bronx, NY as referenced above.

1.32    "**Transfer Taxes**" means, without limitation, all state and local real property deed and transfer taxes as applicable relating to the transfer and financing of the Property, and (b) any mortgage recording and all other stamp taxes or similar taxes, which are exempt pursuant to § 1146(a) of the Bankruptcy Code.

1.33    "**Unsecured Claim**" means an allowed general unsecured claim arising prior to the Petition Date not entitled to priority under the Bankruptcy Code or otherwise secured by property of the Debtors.

1.34    "**Unsecured Creditor**" means the holder of an Allowed Unsecured Claim against the Debtor.

1.35    "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

1.36    **Rules of Interpretation**. For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in this Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (c) any reference to a Claimant includes that Claimant's successors and assigns; (d) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan, as the same may be amended, waived or modified from time to time; (e) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection or clause contained in this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) subject to the provisions of any contract or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply; and (i) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

## ARTICLE II

## <u>UNCLASSIFIED CLAIMS</u>

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims (including Professional Fees), Priority Tax Claims or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9) on the Effective Date, or such other mutually agreed terms as the parties involved may agree.

2.1    **<u>Treatment of Lettire Advances.</u>** Lettire has already advanced significant funds for the pre-development costs and carrying charges necessary to start the Fordham South Project,

both before and after commencement of these Cases. While Lettire's advances are sizeable, Lettire shall not be treated as a creditor for purposes of the Plan. Thus, Lettire shall not be repaid or reimbursed under the Plan from the Exit Financing. Instead, Lettire's advances are part of Lettire's overall financial commitments and contribution towards the Fordham South Project.

2.2 **Administrative Expense Claims**. To the extent not otherwise paid by Lettire, Administrative Expense Claims consist of the costs and expenses of maintaining and preserving the Property, plus allowed Professional Fees. Each holder of an Allowed Administrative Expense Claim, as determined by the Bankruptcy Court, shall be paid the full amount of such allowed claim at the Closing, in cash, or as soon thereafter as is practicable from the Confirmation Fund or Lettire separately

2.3 **Professional Fees**. All Professionals seeking compensation in these Cases shall file an application for allowance covering services rendered herein no later than thirty (30) days after the Effective Date. After notice and a hearing, the allowed Professional Fee Claims shall be reserved from the Confirmation Fund or by Lettire separately and paid promptly after approval by the Bankruptcy Court pursuant to Final Order.

2.4 **Priority Tax Claims**. Any accrued and unpaid real estate taxes and related charges that may be due as of the Effective Date are being treated as an Unclassified  Priority Tax Claim for the purposes of the Plan. All Allowed Priority Tax Claims shall be paid in full, in cash, from the Confirmation Fund or directly at closing by Lettire separately.

2.5 **U.S. Trustee Fees**. The Debtors shall pay all outstanding U.S. Trustee Fees, together with any interest thereon, until these Cases are closed by entry of a final decree.

# ARTICLE III

# CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and Interests against the Debtors consistent with the applicable

provisions of the Bankruptcy Code.

3.1     **Summary**.  The categories listed below classify Claims and Interests against the

Debtors for all purposes, including voting, confirmation and distribution pursuant to Sections 1122

and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| Class 1 | Allowed Secured Claim of Fordham South Lender LLC ("Senior Lender") | No | No |
| Class 2 | Allowed General Unsecured Claims (including Tishman Construction Corp. and personal injury Claimants) | Yes | Yes |
| Class 3 | Preferred Equity and Common Equity | N/A | N/A |

3.2     **Class 1: The Allowed Secured Claim of the Senior Lender**

**Classification** – Class 1 consists of the Allowed secured mortgage Claim of the Senior

Lender after final reconciliation and objection.

**Treatment** – The Senior Lender shall be paid the Allowed Amount of its secured mortgage

Claim in full from the Confirmation Fund or directly at Closing.  Based upon this payment, the

Senior Leder shall issue and deliver at Closing a satisfaction of mortgage or non-recourse

assignment of mortgages at the option of the Debtors and Lettire without further cost or expense.

The satisfaction or non-recourse assignment of mortgage plus other customary release and transfer

documents shall be in form and substance reasonably satisfactory to Lettire and its lenders under

the Commitment.

**Voting** – By virtue of the full payment of the Allowed secured mortgage Claim, the Senior

Lender is being treated as unimpaired and the Senior Lender is not entitled to vote.

8

3.3     **Class 2: Unsecured Claims**

**Classification** – The Debtors are classifying all other non-mortgage claims of creditors as being unsecured under Class 2, including the disputed mechanic's lien claims of Tishman, plus any other vendors and tort claims.

**Treatment** – Allowed Class 2 Unsecured Claims shall be paid and receive a *pro rata* dividend based upon distribution of a general creditor reserve, to be established from the Exit Financing at Closing (the "General Creditor Reserve"). The *pro rata* distribution to Class 2 unsecured creditors from the General Creditor Reserve shall be made in full settlement and release of their respective Allowed Class 2 Claims against the Debtors or the Property. The *pro rata* distribution shall be made no later than fifteen (15) days after the Effective Date.

**Voting** – The Class 2 Claims of Allowed General Unsecured Creditors are impaired and eligible to vote on the Plan.

**Class 3:  Equity Interests**

3.4     **Classification** – Class 3 consists of the various Equity Interests in the Debtors comprised of both the Class A and Class B members.

**Treatment** – The Class A members are Gary Segal's affiliates, Dynamic and DS-1, which are Co-Debtors herein and will not be receiving a distribution under the Plan although the Class A members remain eligible to share in profits from the Fordham South Project consistent with the existing joint venture with Lettire. Conversely, Namdar South, as the Class B preferred member, shall be paid and receive a distribution on account of its preferred Class B interest equal to the balance on hand in the Confirmation Fund after payment of the Allowed Unclassified Claims and the Allowed Class 1 and Class 2 Claims. The distribution to Namdar South as the Class B member shall be made within fifteen (15) days of the Effective Date.

**Voting** – As insiders, Class 3 equity holders are not entitled to vote on the Plan.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

4.1     Pursuant to the Commitment, Lettire shall fund or cause to be funded sufficient monies (previously designated as the Exit Financing) to complete the purchase of the Property by Newco and provide the liquidity to pay the required distributions to the holders of Allowed Claims and Class B interests.  The amount of the Exit Financing reflects the fair market value of the Property and shall be used to support the transfer of the Property to Newco, free and clear of all claims, liens and interests, as provided by 11 U.S.C. Section 1123(b)(4).  While the total Project costs through full construction are projected to aggregate more than $800 million, the first proceeds of the Commitment will be used to effectively "buy-out" the Property from the Debtors' estates, providing the Debtors with funds to meet the obligations owed to creditors and Class B interest pursuant to this Plan.

4.2     Lettire shall use all commercially reasonable efforts to meet the conditions and requirements of the Commitment and coordinate with the respective City and State agencies and proposed lenders to timely close on the intended municipal financing and construction loans.  At Closing, and to implement the Plan, the Debtors shall execute and deliver to Newco all customary transfer and conveyancing documents, including a Bargain and Sale Deed relating to the Property, together with an assignment of all transferrable development rights in form and substance reasonably acceptable to Lettire and its lenders.

4.3     **Transfer Tax Exemptions**.  The transfer of the Property to Newco and related Exit Financing to fund the Plan constitute the making or delivery of instruments of transfer pursuant to or in connection with confirmation of the Plan, and, therefore, to the extent provided by Section

10

1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, including an issuance of the Bargain and Sale and Deed and related mortgage or financing obtained by Newco, shall not be subject under any law imposing a stamp tax, deed tax or mortgage recording taxes under city or state law (previously defined, as the "Transfer Taxes").  Accordingly, the appropriate state and local officials or agents in Bronx County shall forego collection of any such Transfer Taxes and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such Transfer Taxes, including the recording of any mortgages or similar instruments relating to the Exit Financing.

## ARTICLE V

## DISTRIBUTIONS

5.1    **Method of Payment**.  Unless otherwise expressly agreed, payments to be made pursuant to the Plan shall be made at the times and in the amounts set forth herein by either electronic funds wire transfer or check drawn on a domestic bank.

5.1    **Disbursing Agent**.  All post-Closing distributions and/or payments under this Plan shall be made by the Disbursing Agent who shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. All Cash received by the Disbursing Agent shall be kept in a segregated escrow account.  The Disbursing Agent shall not be compensated for services rendered under the Plan (excluding legal matters relating to the closing and objections to claims).  The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the Disbursing Agent's

11

receipt of the Confirmation Fund and ending on the date that all disbursements contemplated by the Plan have been distributed. The Disbursing Agent shall **not** be deemed to be an officer, fiduciary or agent of the Debtor. Furthermore, the Disbursing Agent shall have the express authority to execute a deed to the Property and other conveyance documents in place (including, but not limited to, the appropriate transfer tax returns), instead of members of the Debtors, or other authorized parties of the Debtors, and shall have no other powers or authority with respect to the Debtors. The Disbursing Agent shall have no obligation to file income tax returns or similar reports with the applicable taxing authorities, which obligations shall remain with the Debtor.

5.2 **Rights and Powers of Disbursing Agent**. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) to object to claims and make all post-Closing distributions contemplated hereby, and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court.

5.3 **Disputed Claims Reserves**. No distributions shall be made with respect to any Disputed Claim. Instead, the Disbursing Agent shall deposit into one or more segregated accounts (the "Disputed Claims Reserves," each being a "Disputed Claims Reserve") funds equal to 100% of the Cash that would be distributed under the Plan to the holder of a Disputed Claim that would be an Allowed Claim, but for the dispute in whole or in part. In determining the amount of the Cash to be distributed under the Plan to the holders of Allowed Claims, the calculation of the amount to be distributed to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts.

5.4 **Prosecution of Objections**. The Debtors shall have the right to file, settle, compromise, withdraw or litigate, to final order or judgment, objections to Disputed Claims.

12

Objections to Claims, other than Administrative Expense Claims, shall be served and filed on or before the Claims Objection Deadline, and objections to Administrative Expense Claims shall be served and filed on or before thirty (30) days after the later of the entry of the Confirmation Order or the filing of the Administrative Expense Claim.

5.5 **Distribution After Allowance**.  Within ten (10) days after entry of a Final Order finding all (or part of) a Disputed Claim to be an Allowed Claim (or as soon thereafter as practicable), the Disbursing Agent shall distribute from the funds placed in the Disputed Claims Reserve with respect to such Claim to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

5.6 **Delivery of Distributions**.  Distributions to holder of Allowed Claims shall be made: (i) at the address set forth on the respective Proof(s) of Claim or other request(s) for payment filed by the holder of such Allowed Claim; (ii) at the addresses set forth in any written notices of address change delivered to the Disbursing Agent; or (iii) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of change of address.  If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, the Disbursing Agent will make reasonable attempts to locate the holder of the Allowed Claim or Allowed Interest.  Any further undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution (each, an "Unclaimed Distribution").  A distribution becomes an Unclaimed Distribution if three months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or six months have elapsed since a distribution check has gone uncashed and if no notice has been provided to the Disbursing Agent by the holder of the claim to which such distribution relates containing a

13

valid address for such holder. If such a notice is provided, then, after receipt of such additional

information as the Debtors may require confirming the identity, address and ownership of such

Claim, the Disbursing Agent shall make a distribution of all amounts reserved for such

undeliverable distribution or unclaimed check to such Claim holder at the address provided in such

notice within 14 days thereafter. All Unclaimed Distributions shall revest with the Debtors.

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     The Property is currently vacant and the Debtors are not parties to any leases or

executory contracts. Accordingly, the Plan does not provide any specific treatment of executory

contracts. As may be applicable, the pre-petition joint venture agreement with Lettire, as

applicable, shall be deemed assumed for purposes of the Cases to continue Gary Segal's right to

share in a percentage of future profits.

## ARTICLE VII

## CONFIRMATION AND CONSUMMATION OF THE PLAN

7.1     **Injunction against Interference with the Plan.** The automatic stay shall remain

in place pending the Effective Date or other disposition of the Cases. Except as otherwise noted,

the occurrence of the Effective Date shall forever stay, restrain and permanently enjoin on and

after the Effective Date: (a) the commencement or continuation of any action, the employment of

process, or any act to collect, enforce, attach, recover or offset from any property of the Debtors'

Estates, including the Property; or (b) the creation, perfection or enforcement of any lien or

encumbrance against any property of the Debtors' Estates, including the Property transfer under

this Plan. Since this Plan provides for the liquidation of all or substantially all of the property of

the Debtors' Estates, the confirmation of the Plan will not result in a discharge of the Debtors' pre-

petition obligations and claims. Upon entry of the Confirmation Order, all holders of Claims against or interests in the Debtors and other parties in interest, and any other Person with notice (actual or constructive) of the Confirmation Order shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan or the transfer of the Property to Newco.

7.2     **Conditions to Effective Date.**   The Plan will not become effective, and the Effective Date will not occur, unless and until the Confirmation Order has become a Final Order and shall include approval of the transfer of the Property to Newco consistent with the Commitment.

7.3     **Execution of Documents.**   The Debtors shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of this Plan and Commitment.

7.4     **Limitation as to Liability**.   The Debtors, together with their respective attorneys, members and managers shall not incur any liability to any person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, confirmation, consummation or administration of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of funds under this Plan, or any other action taken or omitted to be taken in connection with the Cases, except for willful misconduct or gross negligence, breach of fiduciary duty, criminal conduct, ultra vires actions or the disclosure of confidential information that causes actual damages.   In addition, the Plan shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York Rules of Professional Conduct for malpractice liability.   Nothing in this Plan nor the Confirmation Order shall effect a release of any

claim by the United States Government or any of its agencies or any state and local authority, including without limitation any claim arising the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor.  In addition, subject to Sections 524 and 1141 of the Bankruptcy Code, the releases, exculpations, and limitations of liability described herein shall not preclude police, federal tax, or regulatory agencies from fulfilling their statutory duties.

      7.5    **Binding Effect**.  Subject to the occurrence of the Effective Date, the provisions of the Plan will bind every holder of a claim against or Interest in the Debtors and inure to the benefit of and be binding on such holder's respective heirs, successors and assigns, regardless of whether the Claim or Interest of such holder is impaired under the Plan and whether such holder accepted the Plan.

## ARTICLE VIII

## RETENTION OF JURISDICTION

      8.1    **Retention of Jurisdiction**.  The Bankruptcy Court shall retain post-confirmation jurisdiction over the following matters:

      8.1.1   To allow or disallow in whole or in part any objections filed prior to the Claim Objection Deadline.

      8.1.2   To grant or deny the applications for allowance of final compensation and reimbursement of expenses of Professionals.

      8.1.3   To enter an order or final decree concluding the Cases following the transfer of the Property, payment of allowed claims, resolution of all disputes, and distribution of all reserves.

8.1.4    To allow, disallow, determine, liquidate, classify, estimate, or establish the treatment of any Claim.

8.1.5    To decide any dispute relating to the transfer of the Property to Newco prior to the Closing thereon or the obligations of the Senior Lender in that regard.

8.1.6    To adjudicate any motions, adversary proceedings, applications or contested matters that may be pending on the Effective Date.

8.1.7    To enter and implement such Orders as may be necessary or appropriate to execute, implement, enforce or consummate the provisions of the Plan, and the distributions hereunder.

## ARTICLE IX

## GENERAL PROVISIONS

9.1    **Headings.**  The headings in the Plan are for reference purposes only.

9.2    **Contents of Confirmation Order.**  The Confirmation Order shall be in form and substance reasonably satisfactory to the Debtors, Lettire and Newco, and may contain various provisions deemed necessary to clarify, implement or enforce the sale of the Property.

9.3    **Orders in Aid of Consummation.**  Pursuant to §§ 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation and/or consummation of the Plan directing the implementation of matters or actions required by the Plan.

9.4    **Compliance with Tax Requirements.**  In connection with the Plan, the Debtors shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to applicable withholding and reporting requirements; *provided, however*, that the transfer of the Property hereunder shall not be

subject to any federal, state or local tax to the fullest extend provided under § 1146(a) of the Bankruptcy Code.

9.5 **Due Authorization by Creditors.** Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is a lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding liens, encumbrances, pledges commitments, agreements or understandings, express or implied, that may or can in any way defeat or modify the rights settled, or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.6 **Amendments and Modifications.** The Plan may be altered, amended or modified by the Debtors at any time before the substantial consummation thereof, as provided in §§ 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

9.7 **Request for Relief under § 1129 (b).** If the Plan is accepted by one or more, but not all, classes of Creditors that are found to be impaired by the Plan, the Debtors may request confirmation under § 1129(b) of the Bankruptcy Code.

9.8 **Filing of Additional Documents.** Except as otherwise provided in the Plan, on or before the Effective Date, the Debtors may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

9.9 **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.10 **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

18

9.11     **Quarterly Fees.**  All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtors until the closing of the Cases under 11 U.S.C. §350(a).

9.12     **Post-Confirmation Reports.**  The Debtors shall file quarterly status reports until the Cases are closed.

Dated: New York, NY
       June 15, 2026

DS Fordham Landing 1 LLC                  Goldberg Weprin Finkel Goldstein LLP
Dynamic Star LLC                          *Counsel for the Debtors*
DS 1 GP Inc.                              125 Park Avenue, 12th Floor
                                          New York, New York 10017
                                          (212) 221-5700
                                          knash@gwfglaw.com


By:    /s/ Gary Segal                     By:    /s/ *Kevin J. Nash*
       Authorized Signatory                      Kevin J. Nash, Esq.