UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| DS Fordham Landing 1 LLC, | Case No. 26-22254-SHL |
| Debtor. | |

---------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| Dynamic Star LLC, | Case No. 26-22255-SHL |
| Debtor. | |

---------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| DS 1 GP Inc., | Case No. 26-22256-SHL |
| Debtor. | |

---------------------------------------------------------------x

## DEBTOR'S JOINT DISCLOSURE STATEMENT

DS Fordham Landing 1 LLC ("DS Fordham"), Dynamic Star LLC ("Dynamic"), and DS 1 GP Inc. ("DS 1") (collectively, the "Fordham South Debtors") hereby submit this Joint Disclosure Statement pursuant to 11 U.S.C. §1125 in connection with the Debtors' accompanying joint Chapter 11 plan of reorganization [ECF No. _____] (the "Plan").

### I.      INTRODUCTION

The Debtors are the owners of a redevelopment project located at 320-340 Fordham Road, Bronx, NY (defined as the "Property" for purposes of the Plan).  The Debtors each commenced their Chapter 11 cases on March 15, 2026 with a clear goal of continuing their redevelopment project to build almost 1,000 affordable housing units (the "Fordham South Project") and obtain financing to address the claims of creditors, consisting primarily of claims and interests held by Igal Namdar ("Namdar").  Acting through an affiliate known as Fordham South Lender, Mr. Namdar acquired the first mortgage debt under controversial circumstances that have generated

significant litigation as to whether Mr. Namdar's acquisition of the mortgage in clandestine fashion violated his fiduciary duties.

While these matters will be challenged further in bankruptcy, the Debtors are continuing with the project and have received a significant financing commitment (the "Commitment") from a highly regarding affordable housing developer, Lettire Construction Corp. and Urban Builders Collaborative LLC (jointly referred to as "Lettire" for purposes of the Plan).  The Commitment, which is attached to the Plan as Exhibit "A", forms the cornerstone of both the Plan and the Debtors' reorganization efforts.

While the Commitment is a very detailed, its main function for purposes of the Plan process is to provide immediate acquisition financing of some $75.2 million that will be made available to the Debtors to fund distributions under the Plan to holders of allowed claims and Class B interests. The funding shall be made in consideration of a transfer of the Property to a special purpose entity designated as Newco.  The Debtors are dedicated to moving the confirmation process forward as fast as possible, and have filed the Plan within the 90 days period outlined in 11 U.S.C. Section 362(d)(3).

## II.    THE SPECIFICS OF THE CONFIRMATION PROCESS

### A.    Purpose of the Disclosure Statement

The Plan seeks to implement the Commitment and constitutes a contract between the Debtors and their creditors and equity holders relating to the disposition of the Property and the treatment and payment of allowed claims and interests.  To assist parties in making an informed decision on whether to vote in favor of the Plan, the Debtors are submitting this Disclosure Statement to provide additional information regarding the terms of the Commitment and the Debtors' prospects for obtaining and closing on exit financing within a reasonable time.  The Bankruptcy Court's approval of the Disclosure Statement, however, does not constitute an

endorsement or recommendation of the Plan, which will be the subject of further hearings to consider confirmation of the Plan.

### B.   The Confirmation Hearing

The Bankruptcy Court has entered an Order (the "Scheduling Order") approving the Disclosure Statement and scheduling a hearing to consider confirmation of the Plan on _____ ___, 2026 at __:__ __.m., prevailing New York Time (the "Confirmation Hearing").  A copy of the Scheduling Order accompanies the Plan and Disclosure Statement, and creditors and equity holders are advised to review the dates and deadlines contained therein for voting and objections carefully.

The Confirmation Hearing will be conducted in person before the Honorable Sean H. Lane of the United States Bankruptcy Court, Courtroom 128, 300 Quarropas Street, White Plains, New York.  Those intending to appear at the Confirmation  Hearing, regardless of whether in person or via the Zoom platform, must register with eCourt Appearances no later than two days prior thereto. the Zoom platform.  The Confirmation Hearing may be adjourned from time to time without further notices other than by notice on the docket.  At the Confirmation Hearing, the Bankruptcy Court shall determine whether the Plan satisfies the requirements of Section 1129(a) or (b) of the Bankruptcy Code in order to approve confirmation of the Plan.

### C.   Voting

The Plan classifies various claims and interests as being impaired or unimpaired within the meaning of the Bankruptcy Code.  For the Plan to be confirmed under 11 U.S.C. Section 1129(a) on a fully consensual basis, all impaired classes of creditors must vote in favor of the Plan or be deemed to accept the Plan as a matter of law.  In these cases, the Class 1 Secured Claim of the Senior Lender shall be paid in full in such amount as determined by the Bankruptcy Court, after reconciliation and objection.  Hence, the Senior Lender's claim is unimpaired for the purposes of

the Plan. Besides the Senior Lender, the Plan also creates a general creditor reserve to make a *pro rata* distribution to all other creditors, which are classified in Class 2. The Class 2 Claimants are both impaired and eligible to vote. A ballot is being provided to all creditors and should be completed and returned before the voting deadline by either overnight mail or email to Goldberg Weprin Finkel Goldstein LLP, Attn: Kevin J. Nash, 125 Park Avenue, 12th Floor, New York, New York 10017. E-mail: KNash@GWFGlaw.com. In order to be considered, a ballot must be actually received on or before _____, 2026 at 5:00 p.m. (prevailing New York time) (the "Voting Deadline").

### D.    Disclaimers

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT ("DISCLOSURE STATEMENT") IS PROVIDED FOR THE PURPOSES OF SOLICITING ACCEPTANCES TO THE PLAN, AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.[1] A COPY OF THE PLAN IS BEING SERVED WITH THIS DISCLOSURE STATEMENT. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE. THE DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b).

CERTAIN STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT, INCLUDING WITH RESPECT TO THE COMMITMENT AND PROJECTED CREDITOR RECOVERIES, ARE BASED ON GOOD FAITH ESTIMATES AND PROJECTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES, ALTHOUGH THE DEBTORS ARE CERTAINLY INTENDING TO CLOSE UNDER THE COMMITMENT IN CONJUNCTION WITH LETTIRE.

### III.    BACKGROUND

### A.    Events Leading to the Debtors' Chapter 11 filings

The Debtors first acquired the Property in 2019 (pre-Covid) for the sum of $31,550,000. From the outset, the Debtors intended to redevelop the site, which is vacant land situated in a prime

---

[1] Unless otherwise expressly set forth herein, capitalized terms used but not otherwise herein defined have the same meanings ascribed to such terms in the Plan.

area adjoining the Harlem River in the Bronx.  The Property was last re-financed by an affiliate of Columbia Pacific known as CPIF Lending LLC ("Columbia Pacific"), which issued a senior mortgage loan in the current principal sum of $44.5 million, including reserves for interest and taxes.

Gary Segal has capitalized the Fordham South Project with total contributions of approximately $15 million.  In 2022, Mr. Namdar became a common member and then in 2024 converted his equity to a Class B preferred equity member in the Fordham South Project pursuant to the Second Amended and Restated Operating Agreement confirming his investment of approximately $21.4 million.

As events unfolded, the senior mortgage matured and the Debtors were in the process of seeking refinancing when Mr. Namdar secretly acquired the mortgage debt, partnering with an entity alleged controlled by Jospeh Cafiero of CREMAC Real Estate, instead of working with his partners to pursue a refinancing.

Mr. Namdar's clandestine efforts undermined and hindered the Fordham South Project and were undertaken in bad faith.  Undeterred, however, the Debtors joined forces with Lettire to re-position the redevelopment of the Property to affordable housing.  This project fits neatly with the City's and State's priorities and mandates relating to affordable housing.  As  noted in the Commitment, Lettire has already expended millions of dollars on pre-development costs and is prepared to fund millions more in advance of ground breaking construction.  From the Debtor's side, a total of approximately $95 million has been invested for acquisition, development costs and carrying charges.

Relatively speaking, the Fordham South Project is highly advanced.  The Debtors expended considerable time and expense in obtaining environmental clearance, which took longer than expected but is now completed.

Despite the progress (or maybe because of the progress) Mr. Namdar was surreptitiously involved in the assignment of the mortgage to the Senior Lender.  Mr. Namdar's conduct was designed to benefit his personal interest at the expense of the Debtors and his other partners. Importantly, neither Mr. Namdar nor the Senior Lender have any management rights under the governing operating agreements.  Accordingly, the issues with respect to Mr. Namdar boil down to fixing the proper amount of his claims and interests.

Once in control of the senior debt, however, Mr. Namdar caused the Senior Lender to re-notice a non -judicial UCC Article 9 foreclosure sale relating to the membership interests of Dynamic and DS 1 in the title holder to the Property, co-Debtor DS Fordham.  The Debtors responded by filing these Chapter 11 cases.

**A.     Significant Events During the Chapter 11 Case**

Not surprisingly, the main protagonist in these Chapter 11 cases has been Mr. Namdar exercising his rights as the Senior Lender.  After commencing these Chapter 11 cases on March 15, 2026, the Debtors filed a full set of schedules and statements on March 31, 2026 [ECF No. 8], and has moved for the joint administration of these three affiliated Debtors, the formal retention of counsel and establishment of a Bar Date.

The initial Section 341 meeting was held and adjourned.  The Debtors have entered into a stipulation with the Senior Lender to provide adequate protection in the form of detailed financial disclosures and maintenance of insurance coverage for the Property, which stipulation was approved by Order of the Bankruptcy Court dated June 5, 2026.

The Debtors have appeared before the Court for various conferences. An appearance is next scheduled for July 8, 2026, following the anticipated filing of the Plan and this Disclosure Statement.

**IV.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.    UNCLASSIFIED CLAIMS**

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims (including Professional Fees), Priority Tax Claims or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9) on the Effective Date, or such other mutually agreed terms as the parties involved may agree.

**Treatment of Lettire Advances.** Lettire has already advanced significant funds for the pre-development costs and carrying charges necessary to start the Fordham South Project, both before and after commencement of these Cases. While Lettire's advances are sizeable, Lettire shall not be treated as a creditor for purposes of the Plan. Thus, Lettire shall not be repaid or reimbursed under the Plan from the Exit Financing. Instead, Lettire's advances are part of Lettire's overall financial commitments and contribution towards the Fordham South Project.

**Administrative Expense Claims**. To the extent not otherwise paid by Lettire, Administrative Expense Claims consist of the costs and expenses of maintaining and preserving the Property, plus allowed Professional Fees. Each holder of an Allowed Administrative Expense Claim, as determined by the Bankruptcy Court, shall be paid the full amount of such allowed claim at the Closing, in cash, or as soon thereafter as is practicable from the Confirmation Fund or Lettire separately.

**Professional Fees**. All Professionals seeking compensation in these Cases shall file an application for allowance covering services rendered herein no later than thirty (30) days after the

Effective Date.  After notice and a hearing, the allowed Professional Fee Claims shall be reserved from the Confirmation Fund or by Lettire separately and paid promptly after approval by the Bankruptcy Court pursuant to Final Order.

**Priority Tax Claims**.  Any accrued and unpaid real estate taxes and related charges that may be due as of the Effective Date are being treated as an Unclassified  Priority Tax Claim for the purposes of the Plan.  All Allowed Priority Tax Claims shall be paid in full, in cash, from the Confirmation Fund or directly at closing by Lettire separately.

**U.S. Trustee Fees**.  The Debtors shall pay all outstanding U.S. Trustee Fees, together with any interest thereon, until these Cases are closed by entry of a final decree.

**B.**     **CLASSIFICATION AND TREATMENT OF CLAIMS**

The Plan classifies Claims and Interests against the Debtors consistent with the applicable provisions of the Bankruptcy Code.

**Summary**.  The categories listed below classify Claims and Interests against the Debtors for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| Class 1 | Allowed Secured Claim of Fordham South Lender LLC ("Senior Lender") | No | No |
| Class 2 | Allowed General Unsecured Claims (including Tishman Construction Corp. and personal injury Claimants) | Yes | Yes |
| Class 3 | Preferred Equity and Common Equity | N/A | N/A |

**Class 1: The Allowed Secured Claim of the Senior Lender**

**Classification** – Class 1 consists of the Allowed secured mortgage Claim of the Senior Lender after final reconciliation and objection.

**Treatment** – The Senior Lender shall be paid the Allowed Amount of its secured mortgage Claim in full from the Confirmation Fund or directly at Closing.  Based upon this payment, the Senior Leder shall issue and deliver at Closing a satisfaction of mortgage or non-recourse assignment of mortgages at the option of the Debtors and Lettire without further cost or expense. The satisfaction or non-recourse assignment of mortgage plus other customary release and transfer documents shall be in form and substance reasonably satisfactory to Lettire and its lenders under the Commitment.

**Voting** – By virtue of the full payment of the Allowed secured mortgage Claim, the Senior Lender is being treated as unimpaired and the Senior Lender is not entitled to vote.

**Class 2: Unsecured Claims**

**Classification** – The Debtors are classifying all other non-mortgage claims of creditors as being unsecured under Class 2, including the disputed mechanic's lien claims of Tishman, plus any other vendors and tort claims.

**Treatment** – Allowed Class 2 Unsecured Claims shall be paid and receive a *pro rata* dividend based upon distribution of a general creditor reserve to be established from the Exit Financing at Closing (the "General Creditor Reserve").  The *pro rata* distribution to Class 2 unsecured creditors from the General Creditor Reserve shall be made in full settlement and release of their respective Allowed Class 2 Claims against the Debtors or the Property.  The *pro rata* distribution shall be made no later than fifteen (15) days after the Effective Date.

**Voting** – The Class 2 Claims of Allowed General Unsecured Creditors are impaired and eligible to vote on the Plan.

9

**Class 3:  Equity Interests**

**Classification** – Class 3 consists of the various Equity Interests in the Debtors comprised of both the Class A and Class B members.

**Treatment** – The Class A members are Gary Segal's affiliates, Dynamic and DS-1, which are Co-Debtors herein and will not be receiving a distribution under the Plan although the Class A members remain eligible to share in profits from the Fordham South Project consistent with the existing joint venture with Lettire.  Conversely, Namdar South, as the Class B preferred member, shall be paid and receive a distribution on account of its preferred Class B interest equal to the balance on hand in the Confirmation Fund after payment of the Allowed Unclassified Claims and the Allowed Class 1 and Class 2 Claims.  The distribution to Namdar South as the Class B member shall be made within fifteen (15) days of the Effective Date.

**Voting** – As insiders, Class 3 equity holders are not entitled to vote on the Plan.

**C.     MEANS FOR IMPLEMENTATION OF THE PLAN**

Pursuant to the Commitment, Lettire shall fund or cause to be funded sufficient monies (previously designated as the Exit Financing) to complete the purchase of the Property by Newco and provide the liquidity to pay the required distributions to the holders of Allowed Claims and Class B interests.  The amount of the Exit Financing reflects the fair market value of the Property and shall be used to support the transfer of the Property to Newco, free and clear of all claims, liens and interests, as provided by 11 U.S.C. Section 1123(b)(4).  While the total Project costs through full construction are projected to aggregate more than $800 million, the first proceeds of the Commitment will be used to effectively "buy-out" the Property from the Debtors' estates, providing the Debtors with funds to meet the obligations owed to creditors and Class B interest pursuant to this Plan.

10

Lettire shall use all commercially reasonable efforts to meet the conditions and requirements of the Commitment and coordinate with the respective City and State agencies and proposed lenders to timely close on the intended municipal financing and construction loans.  At Closing, and to implement the Plan, the Debtors shall execute and deliver to Newco all customary transfer and conveyancing documents, including a Bargain and Sale Deed relating to the Property, together with an assignment of all transferrable development rights in form and substance reasonably acceptable to Lettire and its lenders.

**Transfer Tax Exemptions**.  The transfer of the Property to Newco and related Exit Financing to fund the Plan constitute the making or delivery of instruments of transfer pursuant to or in connection with confirmation of the Plan, and, therefore, to the extent provided by Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, including an issuance of the Bargain and Sale and Deed and related mortgage or financing obtained by Newco, shall not be subject under any law imposing a stamp tax, deed tax or mortgage recording taxes under city or state law (previously defined, as the "Transfer Taxes").  Accordingly, the appropriate state and local officials or agents in Bronx County shall forego collection of any such Transfer Taxes and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such Transfer Taxes, including the recording of any mortgages or similar instruments relating to the Exit Financing.

**Disbursing Agent**.  All post-Closing distributions and/or payments under this Plan shall be made by the Disbursing Agent who shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. All Cash received by the Disbursing Agent shall be kept in a segregated escrow account.  The

Disbursing Agent shall not be compensated for services rendered under the Plan (excluding legal matters relating to the closing and objections to claims). The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the Disbursing Agent's receipt of the Confirmation Fund and ending on the date that all disbursements contemplated by the Plan have been distributed. The Disbursing Agent shall **not** be deemed to be an officer, fiduciary or agent of the Debtor. Furthermore, the Disbursing Agent shall have the express authority to execute a deed to the Property and other conveyance documents in place (including, but not limited to, the appropriate transfer tax returns), instead of members of the Debtors, or other authorized parties of the Debtors, and shall have no other powers or authority with respect to the Debtors. The Disbursing Agent shall have no obligation to file income tax returns or similar reports with the applicable taxing authorities, which obligations shall remain with the Debtor.

**Rights and Powers of Disbursing Agent**. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) to object to claims and make all post-Closing distributions contemplated hereby, and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court.

D.      **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Property is currently vacant and the Debtors are not parties to any leases or executory contracts. Accordingly, the Plan does not provide any specific treatment of executory contracts. As may be applicable, the pre-petition joint venture agreement with Lettire, as applicable, shall be

12

deemed assumed for purposes of the Cases to continue Gary Segal's right to share in a percentage of future profits.

### E.      CONFIRMATION AND CONSUMMATION OF THE PLAN

**Injunction against Interference with the Plan.**  The automatic stay shall remain in place pending the Effective Date or other disposition of the Cases.  Except as otherwise noted, the occurrence of the Effective Date shall forever stay, restrain and permanently enjoin on and after the Effective Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from any property of the Debtors' Estates, including the Property; or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Debtors' Estates, including the Property transfer under this Plan.  Since this Plan provides for the liquidation of all or substantially all of the property of the Debtors' Estates, the confirmation of the Plan will not result in a discharge of the Debtors' pre-petition obligations and claims. Upon entry of the Confirmation Order, all holders of Claims against or interests in the Debtors and other parties in interest, and any other Person with notice (actual or constructive) of the Confirmation Order shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan or the transfer of the Property to Newco.

**Conditions to Effective Date.**  The Plan will not become effective, and the Effective Date will not occur, unless and until the Confirmation Order has become a Final Order and shall include approval of the transfer of the Property to Newco consistent with the Commitment.

**Execution of Documents.**  The Debtors shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of this Plan and Commitment.

**Limitation as to Liability**.  The Debtors, together with their respective attorneys, members and managers shall not incur any liability to any person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, confirmation, consummation or administration of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of funds under this Plan, or any other action taken or omitted to be taken in connection with the Cases, except for willful misconduct or gross negligence, breach of fiduciary duty, criminal conduct, ultra vires actions or the disclosure of confidential information that causes actual damages.  In addition, the Plan shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York Rules of Professional Conduct for malpractice liability.  Nothing in this Plan nor the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority, including without limitation any claim arising the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor.  In addition, subject to Sections 524 and 1141 of the Bankruptcy Code, the releases, exculpations, and limitations of liability described herein shall not preclude police, federal tax, or regulatory agencies from fulfilling their statutory duties.

**Binding Effect.**  Subject to the occurrence of the Effective Date, the provisions of the Plan will bind every holder of a claim against or Interest in the Debtors and inure to the benefit of and be binding on such holder's respective heirs, successors and assigns, regardless of whether the Claim or Interest of such holder is impaired under the Plan and whether such holder accepted the Plan.

**Retention Of Jurisdiction**.   The bankruptcy court shall retain post-confirmation jurisdiction over the following matters: (i) To allow or disallow in whole or in part any objections filed prior to the Claim Objection Deadline; (ii) To grant or deny the applications for allowance of final compensation and reimbursement of expenses of Professionals; (iii) To enter an order or final decree concluding the Cases following the transfer of the Property, payment of allowed claims, resolution of all disputes, and distribution of all reserves; (iv) To allow, disallow, determine, liquidate, classify, estimate, or establish the treatment of any Claim (v) To decide any dispute relating to the transfer of the Property to Newco prior to the Closing thereon or the obligations of the Senior Lender in that regard; (vi) To adjudicate any motions, adversary proceedings, applications or contested matters that may be pending on the Effective Date and (vii) To enter and implement such Orders as may be necessary or appropriate to execute, implement, enforce or consummate the provisions of the Plan, and the distributions hereunder.

## V.   CONFIRMATION REQUIREMENTS

At the Confirmation Hearing, the Debtors shall request that the Bankruptcy Court determine that the Plan satisfies the requirements of Section 1129(a) of the Bankruptcy Code, which included finding that:

(a)   The Plan complies with the applicable provisions of the Bankruptcy Code;

(b)   The Debtors have complied with the applicable provisions of the Bankruptcy Code in promulgating the Plan;

(c)   The Plan has been proposed in good faith and not by any means forbidden by law;

(d)   The Plan is feasible and not likely to be followed by the need for further reorganization; based upon the implantation of the Commitment and the transfer of title of the Property.

(e)   The Plan meets the "Best Interests" test in that creditors will receive more under the Plan than they would receive in a Chapter 7 liquidation; and

(f)   The Plan has been accepted by at least one class of impaired creditors.

## A.      Acceptance

The Debtors anticipates that the Plan will be accepted by General Unsecured Creditors. Thus, the Plan will meet the requirement that it be accepted by at least one class of impaired creditors.

## B.      Feasibility

The Bankruptcy Code requires the Debtors to establish that it has the funds necessary to pay creditors on the Effective Date and that confirmation is not likely to be followed by the liquidation or the need for further financial reorganization.  Here, as part of the Confirmation Hearing, Lettire shall confirm the its ability to fund the Commitment so that the Debtors can discharge all of their obligations under the Plan.

## C.      Best Interests Test

The Plan also easily meets the Best Interests test, since creditors stand to receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.  In fact, since the land is currently vacant and construction has not commenced, if the Property was liquidated by a Chapter 7 trustee, there would be no funds available to pay any pre-petition creditors and diminished funds to the Senior Lender.

## D.      Risk Factors – The primary risk factor is whether Lettire will be able to fund the

Commitment.  Evidence will be adduced at the Confirmation hearing with respect to Lettire's financial wherewithal and previous history in successfully completed affordable housing projects.

## VI.  RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in the Disclosure Statement, the Debtors believe that confirmation and consummation of the Plan is preferable to all other alternatives.  Consequently, the Debtors urge all Creditors to vote to **accept** the Plan.

Dated: New York, NY
       June 15, 2026

DS Fordham Landing 1 LLC
Dynamic Star LLC
DS 1 GP Inc.

Goldberg Weprin Finkel Goldstein LLP
*Counsel for the Debtors*
125 Park Avenue, 12th Floor
New York, New York 10017
(212) 221-5700
knash@gwfglaw.com

By:  /s/ Gary Segal
       Authorized Signatory

By:  /s/ *Kevin J. Nash*
       Kevin J. Nash, Esq.